UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER HESS,

                Plaintiff,

                                    Case No. 04-CV-72400

vs.

                                      HON. GEORGE CARAM STEEH

CANTEEN VENDING SERVICE and
COMPASS GROUP U.S.A. DIVISION,

                Defendant.

_____/

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DOCUMENT NO. 29]

      This case arises out of the termination of plaintiff Peter Hess' employment as a Customer Service Manager by defendant Compass Group, U.S.A. Plaintiff alleges that his termination was a result of age discrimination, while defendant maintains it was solely the result of a reduction in force. Oral argument was heard on defendant's motion for summary judgment on July 5, 2005. For the reasons that follow, defendant's motion for summary judgment is GRANTED.

FACTUAL BACKGROUND

      Compass Group, through its division, Canteen Vending ("Canteen"), operates and services vending machines located on its clients' properties that dispense food and beverage products. Canteen is subdivided on a geographical basis into regional and district areas of operation, including the Detroit, Michigan branch office, which services the Detroit metropolitan area. Canteen's Regional Vice President, Walter Bucki, oversees all vending operations for Canteen's Midwest Region. The Detroit Branch

General Manager during the relevant period was Fred Woelky, who reported to Bucki. The District Operation Manger, John Szymkowicz, reported to Woelky, and is responsible for managing day-to-day operations at the Detroit Branch.  Part of Szymkowicz's management duties include supervising Customer Service Managers (CSMs) such as Hess.

CSMs manage vending machine sales and service for designated customers. Each customer is serviced as part of a designated route by a Route Driver, who makes daily visits to the customers to stock and service the machines.  In addition to the CSMs, Canteen employs a Client Service Manager, who performs CSM duties for the larger clients.  The Client Service Manager position is higher on the organizational chart than the CSM and has a higher pay grade.  In 2002, Canteen promoted CSM Doug Jenks to Client Service Manager.

Canteen evaluates each CSM on an annual basis, using a two part performance evaluation form.  The score in Part One of the evaluation is a measure of the Detroit Branch's overall performance.  Every Detroit Branch CSM receives the same rating on Part One.  The score in Part Two is based on the supervisor's assessment of the CSM's individual performance.  Part One is multiplied by .75 and Part Two is multiplied by .25, then the scores are added together to achieve the CSM's final performance rating.

Canteen's revenues fluctuate due to variances in sales from its customers, and expenses are occasionally reduced by reductions in force ("RIFs").  Canteen alleges that it had a procedure for eliminating CSM positions due to RIFs, whereby the CSM with the lowest performance rating on the last evaluation would be terminated.  Canteen alleges that each time a CSM was terminated, Compass Group's Human Resources

2

Department was consulted to verify that the layoff procedure was consistent with company policy.

Woelky and Szymkowicz allegedly applied the "CSM layoff procedure" twice prior to 2003.  In March 1999, CSM Chuck Baker was laid off during a RIF caused by a loss of business.  Baker had a 2.7 performance rating on his last review, the lowest among the five CSMs at the Detroit Branch.  Hess worked as a CSM at the time, but had a performance rating of 3.0, and was retained.  At the time of the RIF, Hess, who was born in 1943, was 56 years old, and Baker was 52 years old.

The next RIF was in August 2001.  The CSM with the lowest performance rating among the three CSMs employed was William Watts.  Watts was 49 years old and had a performance rating of 2.0.  Hess was 58 years old at that time, had a performance rating of 2.8, and was retained.

Hess was off work from February to May, 2002 following heart bypass surgery. Upon returning to work, Woelky expressed his surprise to Hess that he had returned to work instead of retiring.  In December 2002, Szymkowicz prepared Hess' performance evaluation.

In the summer of 2003, Canteen lost its largest account, the University of Michigan, and experienced a substantial loss of revenue at its Detroit Branch.  The University accounted for approximately $1 million in annual revenue.  Bucki met with Woelky to discuss the impact of the loss of business on the Detroit Branch, and told him to compensate for the lost revenue by reducing payroll.  Woelky determined that one CSM and several Route Drivers needed to be laid off.  Woelky and Szymkowicz eliminated the CSM with the lowest performance rating during the last review, which

3

was Hess.  Hess' overall performance rating was 2.7, and the other CSM, Leonard

Ferrell, had a performance rating of 2.8.  Ferrell was 34 years old, and had been

promoted to CSM in June, 2001.  Woelky and Szymkowicz allegedly consulted an

official in Human Resources who confirmed that the decision to lay off Hess was

consistent with company policy.  Hess was terminated in September 2003, after working

for defendant for 38 years.

    Following Hess' termination, Canteen management distributed Hess' route

assignments to Jenks and Ferrell.  Since Hess' layoff, Canteen has not hired another

CSM.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

    Federal Rule of Civil Procedure 56(c) empowers the court to render summary

judgment "forthwith if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."  See <u>Redding v. St. Eward</u>, 241 F.3d 530, 532 (6th Cir. 2001).  The

Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice.  The procedure is not a disfavored

procedural shortcut.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>see</u> <u>also</u> <u>Cox</u>

<u>v. Kentucky Dept. of Transp.</u>, 53 F.3d 146, 149 (6th Cir. 1995).

    The standard for determining whether summary judgment is appropriate is

"'whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law.'"

<u>Amway Distributors Benefits Ass'n v. Northfield Ins. Co.</u>, 323 F.3d 386, 390 (6th Cir.

4

2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

<u>ANALYSIS</u>

I. <u>Age Discrimination - Prima Facie Case</u>

The Sixth Circuit uses a modified McDonnell Douglas framework in evaluating age discrimination claims. A plaintiff must first establish a prima facie case by showing that (1) he was a member of the protected class, (2) he was subjected to an adverse

5

employment action, (3) he was qualified for the particular position, and (4) the successful applicant was a substantially younger person. Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999).

In age discrimination cases resulting from a reduction in force, plaintiffs are not required to plead the fourth prong of the prima facie framework because in a typical RIF case, the plaintiff is not replaced. Id. at 371. Instead, plaintiff is required to present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." Id. (citing Barnes v. Gencorp., Inc., 896 F.2d 1457, 1465 (6th Cir. 1990). Once the plaintiff establishes this prima facie showing, the burden of production shifts to the employer to set forth a legitimate, non-discriminatory reason for the layoff, which is the RIF itself. Id. at 371. Thereafter, the burden returns to the plaintiff to establish pretext. Id.

A.  RIF

The Sixth Circuit defined a RIF in Barnes v. Gencorp, Inc., 869 F.2d at 1465:

> A workforce reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a workforce reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

Even if a layoff involves the elimination of only one position, the layoff qualifies as a RIF, provided that it meets all the other RIF criteria. Id.

Defendant argues that business reasons were the sole motivation for its decision to eliminate a CSM. Defendant suffered a significant loss of business in 2003 caused

6

by a decline in vending sales from its automobile manufacturing customers and its loss of its biggest account, the University of Michigan.  Defendant's records show that its revenue in early 2004 was more than $200,000 less than its revenue at the same point in early 2003.

Defendant further maintains that it did not replace Hess with another employee, but instead distributed his route assignments to Ferrell and Jenks.  Ferrell and Jenks received some of Hess' duties in addition to their other related work, and defendant did not hire or reassign any other employees to perform Hess' duties.  Defendant has therefore satisfied the requirements of Barnes to establish that Hess was terminated as part of a RIF.

B.  Prima Facie Analysis

Plaintiff must set forth as part of his prima facie case "additional direct, circumstantial or statistical evidence" demonstrating that defendant singled him out for termination for "impermissible reasons."  Godfredson, 173 F.3d at 371.  As direct evidence of age bias, plaintiff points to allegedly ageist comments made by Woelky in May of 2002.  According to plaintiff, Woelky expressed surprise that plaintiff returned to work instead of retiring following a medical leave.  This incident may be dismissed as a "stray remark" which is too vague and temporally remote to constitute evidence of age discrimination.  The Sixth Circuit has held that remarks made more than a year before the adverse employment action are too remote in time to establish age discrimination.  Phelps v. Yale Security, Inc., 986 F.2d 1020, 1025-26 (6th Cir. 1993).  In this case, Hess was terminated 16 months after the ageist comment was made.  Furthermore, in making the remark, Woelky never referred to plaintiff's age, nor did he suggest that

7

plaintiff should retire.  Finally, Woelky was not the decision-maker with regard to plaintiff's termination, nor is there any connection between Woelky's comment and plaintiff's performance evaluations.

Plaintiff next attempts to establish a pattern of discriminating against older employees.  Plaintiff avers that after Chuck Baker was terminated, he was actually replaced by the younger Rick DeWater.  Baker was terminated in April 1999 and DeWater was hired five months later as a Support Service Manager (SSM).  Nine months after Baker's termination, in January, 2000, DeWater was promoted to CSM.  These occurrences are too remote in time to constitute replacement by somebody younger.  In addition, there is no evidence that DeWater took over any of Baker's accounts.  DeWater was then demoted in March, 2001, and he resigned in May, 2001.  Then in August, 2001, William Watts was laid off, leaving an older and more experienced Hess, and a younger, newly promoted Ferrell in the position of CSM.  The evidence is clear that Baker and Watts were the lowest-rated CSMs at the time of their layoffs.  Plaintiff has failed to establish a pattern of discrimination in this case.

Because of the manner in which the evaluation scores are calculated, with all CSMs receiving 75% of their score based on group performance, the overall scores are clustered with little variance between CSMs.  For this reason, the Court will focus on the scores on Part 2 of the evaluations for individual performance.  In 2001, Ferrell had been in the position of CSM for 6 months, and had an individual performance score of 3.8.  For the entire year of 2001, Hess had an individual performance score of 3.7.  In 2002, Ferrell had a score of 3.83, compared to Hess' score of 3.25.  Plaintiff points to the deposition of field HR manager Pamela Schradel, who testified that when there is a

8

red flag of potential discrimination, seniority might become an important factor to consider.  Plaintiff argues that such a red flag existed here, where an employee in a protected class had almost identical scores as an employee outside the protected class. However, in this case, the difference in evaluation scores on Part 2 was .58, which is 10% on the 5-point scale used.  Because there is no other indicia of discrimination in this case, the deposition testimony of Ms. Schradel is not enough to create an issue of fact.

Plaintiff has failed to make out a prima facie case of age discrimination.  In particular, plaintiff has failed to present direct, circumstantial or statistical evidence tending to indicate that defendant singled him out for discharge for impermissible reasons.

<u>CONCLUSION</u>

For the reasons stated, defendant's motion for summary judgment is GRANTED.

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  July 15, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on July 15, 2005, by electronic and/or ordinary mail.

<u>s/Josephine Chaffee</u>
Secretary/Deputy Clerk

9